may please the court. Frank Sproul is appearing for petitioner appellant. Good morning. Good morning. While I grant there are some similarities, I would like to address the what's left of the attack on the summary opinion procedures following the Carici case. Yes. I may be in an arguably unenviable position, but I believe there is some room left. The most obvious distinction between this case and Carici was that Carici involved a situation where this Carici arose in a case of cancellation removal where Congress explicitly said this court has no jurisdiction. Carici court simply said you don't necessarily have any right to administrative review. The appeal that you received, which is the so-called streamlining procedures, does not offend due process. This case is different. This case was asylum and withholding removal. Now we have to look to what Congress intended, not what the executive branch did. Just a minute. Just a minute. You're saying Carici doesn't control because this is an asylum case? Right. That's the key distinction. I mean, in fact, Carici only obliquely addressed that issue. It simply said that there is no due process vice, because imagine if the person was an asylum applicant, they would at least get Ninth Circuit review. Well, this case is different. This is a pure asylum case. Congress intended this Court to have Federal appellate review. And my argument remains, as I said at the beginning, is that the one-sentence opinion, which is very similar to a practice that the Board would often do, sort of adopting the decision of the IJ, this Court regularly criticized. It was considered a due process and appellate vice, and it's now the accepted practice of the Board. So I believe there is a distinction between Carici and an asylum case. Again, I think the question in Carici really dealt with whether or not the executive branch provided due process. And as we all know, regrettably or not regrettably, depending on your orientation, the due process rights that aliens have are exactly what is provided. Here, however, Congress, the legislative branch, provided a Federal appellate review for asylum cases. And so to that extent, I believe that's the case. I'm not following your argument. I mean, you still get Federal appellate review, right? My point is it's not meaningful when you're basically construing one sentence. Now, I understand that that's the case. Well, no. You construe the under Carici, you construe, we construe the immigration judges. Right. That's usually more than one sentence. Well, but again, I think the you have to look at what did Congress look, what was the landscape of appellate review when Congress wrote 1996 law, which was that there was two levels of review. There was the I.J. decision and then there was a meaningful BIA decision. Nothing in the 1996 law changed that. I believe my argument is that the executive overstepped their bounds. They are legislating. They're not regulating by having one-sentence opinions for asylum cases. And that's my point there. Now, if I may go to one other. Obviously, it's similar to the prior case, and that's the voluntary departure issue. And that's the same thing that occurred here. This appellant did not request a stay of voluntary departure because such a procedure did not exist at the time he filed the petition for review. I believe I have the right to make my oral motion right here for a non-proton grant of voluntary departure. And the reason I believe it's actually dispositive is because the case that allows an alien to file for voluntary departure said specifically that the standard for granting a stay of voluntary departure is coextensive with the standard for a stay of removal. In this case, a stay of removal was granted. I believe there's nothing to talk about. Was before the I.J. was voluntary departure sought? Oh, yes, it was sought and it was granted. It was granted. And then the BIA gave their usual 30 days. And then, of course, and the government in this case didn't oppose the request for a stay of removal. So I think they really don't have any grounds to propose a stay of voluntary departure today, given that the case said quite clearly that the standards are coextensive. So to that extent, I'll submit. All right. Our clock's not running, but we'll give you two minutes for rebuttal, all right? Thank you, Your Honor. Jamie Dowd, again, on behalf of the respondents. I want to address, I guess, number one, the arguments that were made as regards to the Carice decision and the Board's summary affirmance practices. Actually, the Board did not summarily affirm in this case, so I'm not really sure how relevant that inquiry would be here.  There is a Board decision. The Board did address the issues raised by the petitioners on appeal. The Board specifically says that they allege numerous instances of error and that the Board found that the far-reaching and widespread allegations of error are not present. They also, we find ourselves in full accordance with the thorough and well-written decisions of the immigration judge below. So there's, I'm not really sure why the petitioners would argue that their case wasn't appropriate for summary affirmance when it was not summarily affirmed. In terms of the voluntary departure issue, I guess what I should say about that is that the Board's, I mean, this Court's decision, earlier decision regarding voluntary departure, took into account the fact that the old law, under the old law, once the alien departed the country, he was no longer eligible to have his petition reviewed by a court of appeals. So that was kind of the impetus for saying that the voluntary departure period should be stayed, because if it were not, then the alien would have no opportunity for review. That, however, with the new permanent rules is not the case. The alien always has the opportunity for review before this Court or any other court of appeals as long as he files a timely petition. So it's not necessarily the same inquiry. I will go back to what I said earlier in terms of the fact that the law did change, and even the immigration judge's decision and the Board's decision reflect that the petitioners are granted a certain amount of time to depart. If they do not depart, then they are ineligible for certain relief. The law says that. The decisions put the petitioners on alert that that is the case. Therefore, if they wanted an additional grant of that voluntary departure period, the appropriate forum initially would be to file such a motion, I guess, or a request with the district director. That's what the law says. Extensions within a time period specified or any extensions granted by the district director. The petitioners here did not file a request for extension with the district director, which would have been their first course of action. They also failed to file a motion for stay of the voluntary departure period with this Court. So, one, the Court's consideration in terms of the alien being able to pursue his petition for review is not present, because this is a permanent rules case. And, two, the aliens here did not file for extension from the district director and did not file with their petition for review a motion for stay of the voluntary departure period with this Court. So we would oppose such a motion at this time. Okay. Are there no further questions? No. All right. Thank you, Ms. Town. Very, very briefly, Your Honor. Page 3 of the administrative record. The Board affirms without opinion the results of the decision below. The decision below is, therefore, the final agency determination. That's a summary opinion. I don't know what counsel is talking about, but it seems pretty clear to me. That's a one-sentence streamlined decision. And just very briefly on the voluntary departure issue, all petitioners who filed petitions for review before the Zarazuta case obviously relied on existing Ninth Circuit case law. We're not supposed to be able to look into a crystal ball and determine what the law is going to be subsequent to our petition. We relied on the law at the time. We said clearly and unambiguously that voluntary departure ran through the period of the Ninth Circuit review. I'll submit it. Okay. Ms. Sproul, thank you. I have before me the board's opinion, so I'm a little bit baffled by your. Page three of the administrative record. September 26, 2002. Gabriel Villanueva, 75-301-340. But there also is a two-page decision by the BIA, right? It's stamped August 26, 2002. And that also, that's my page two of the AR. Yeah. So we have three. It's very curious. My page one is 926-02. Page two is a repeat of that same cover page. And page three is the one-sentence opinion. Let me ask the government, Ms. Dowd, do you have a copy of the administrative record with you? I do not have an administrative record, Your Honor. I have the board's decision of August 26th. And the history review fell out of this Court on September 24th of that decision. So there could have been no additional review on September 26th. All right. I'm not sure about that decision. All right. My record only has – and I wasn't the attorney below. So I'm literally looking at the four corners of the record, and I have a one-sentence September 26th. So to the extent that they did, well, it's very odd. Do you have the administrative record? It may sit very plainly there in this two-page decision. Do you have a two-page decision of the board dated August 26th, 2002? I do not. I have a summary opinion on page three dated September 26th, 2002. Is it the same file number, A75261312? No. Mine is A75301340. Well, that's a different case. Is it Villanueva? Villanueva-Reyza. Yeah. I'm curious. That's very curious. Because in these cases, my recollection is the administrative record is supplied by the INS, right? Am I correct? Yes. And our AR, I guess we all have the same one, has the two-page board decision, the one that government counsel quoted from. What's the first name you have for Villanueva? Gabrielle. Well, that's a whole different person. We have Angel. Angel Araiza Villanueva is the lead petitioner. A75261312. Extraordinarily curious, Your Honor. I think somewhere somebody gave you the wrong record. Right. And I have a brief regarding Carici and the like. We have several administrative records. The report is from the administrative record that was submitted to this Court. The document indicates that there are several records. Now, sometimes there's confusion when there's motions to reopen, but there really wasn't anything in this. Now, you see. I don't know if Angel has a better case than my client. Well, Mr. Sproul, the caption you put on your brief is Angel Villanueva Araiza. But the name you just gave us from your summary affirmance is a different name. Right. And I have an administrative record of the Gabrielle Villanueva Araiza. There's the confusion, Your Honor. I think you must have the wrong administrative record. I think that's the case. You want to have some time to look into that? I would appreciate that, Your Honor. I suspect. Why don't we hold this open? We'll hold this open for a week, and you can, you know, send us a letter if you think that decision you have is a correct one, rather than the one we have in government counsel. I'm going to ask government counsel, would you, in the next few days, give Mrs. Sproul a copy of that, of the BIA decision that you were referring to? All right. So you can compare the two and then you can make whatever investigation you need. And if you think we're looking at the wrong administrative record, you, you give us, send us a letter within a week. Would you do that? We'll hold the record open for that period. And then if he sends something you can, if you think you ought to, you can reply. All right. OK. So on that basis, then we'll submit this case at this time. All right. So I'll say one one week. OK. Next case on the argument calendar is Kuhn.
judges: Hug, B Fletcher, Tashima